Our next case is Finisar Corporation v. Directv. This case is Finisar Corporation v. Directv. When you're ready, Mr. Roberts. Good morning, Your Honor. This case can be boiled down to two issues, anticipation and obviousness. Summary judgment of anticipation should be reversed because the whereby clause is a limitation and there are at least genuine issues of fact in all the claims. On obviousness, the summary judgment should be reversed for any one of three independent reasons. First, that the district court exceeded the mandate from the prior appeal. Second, Directv waived its right to rely on new prior art by not raising it at trial. And third, there are questions of fact which preclude the entry of summary judgment on obviousness. I'd like to jump into anticipation by noting that there are genuine issues on all the claims, but I'd first like to address the whereby clause in Claims 17 and 39. The district court ruled that a whereby clause that merely states a result of foregoing steps in the claim is not a limitation and can be ignored. This, however, is contrary to this court's precedent and long history of cases addressing whereby clauses. The proper analysis is that a whereby clause that merely states the result of the inherent result of the foregoing claim limitations can be ignored. But a whereby clause that goes beyond that... What does this add? This whereby clause adds at least two limitations. It adds a timing limitation whereby subscribers can be informed when a specified portion of the information database will be received. Thus, you have to generate and decode timestamps before the reference portion is received. Otherwise, it doesn't inform subscribers when the reference portion will be received. The other thing the whereby clause adds... I don't quite understand that. I mean, obviously, the other side is saying this is a natural, an inherent result. So, of course, it's going to be after that. No, I think the other... The only reason you decode is to find out the time, in other words. Yeah, the reason you decode is to find out the time, but that has to be communicated before the information is received in order to give advance notice. In other words, the purpose of this is to give advance notice of when something is going to be transmitted. The other side is saying that it's only... Well, our position that if the whereby clause only recited an inherent limitation in the claim, that would be the case. This case provides for a number of options, only one of which is recited in the whereby clause. And that's why the whereby clause goes beyond that and limits the claim to that particular instance recited in the whereby clause. Does the fact that the whereby clause has this permissive word can, which is typically not allowed as a claim limitation, does that influence how we construe the whereby clause here? No, it doesn't, Your Honor, because that merely distinguishes from the situation of actually informing subscribers, having a person that actually has to receive notice. That distinguishes that situation where this provides that notice and irrespective of whether the subscriber actually sees the notice. Now, the other point, the other restriction... Okay, go ahead. The other restriction added by the whereby clause is that the capability recited in the whereby clause has to flow from the foregoing limitations. Now, when this whereby clause has always been treated as limitation throughout this case, even going back to the prosecution history, the 505 patent, the whereby clause was rejected. Let me ask a question. I really don't understand most of your arguments about the whereby clause. But nonetheless, let me ask you if you think this one is correct, which the one thing when I read this whereby clause that made me pause and think maybe it was a limitation was because it does, while it might state intended purpose, it does more than that. It articulates another step in the method. The step being that the subscriber must have access. It's kind of like suppose the claim was make a peanut butter and jelly sandwich, spread peanut butter on one piece, spread bread on the other. You've got a sandwich whereby a person can eat it, whereby a person will eat it, whereby it will be eaten. The eaten part is clearly another step in the method. I mean, you've got a peanut butter and jelly sandwich sitting there, but it doesn't mean someone's going to eat it. And so I guess my question to you is this. Why do you get a show if you're not going to watch it? Why do you make a peanut butter jelly sandwich if you're not going to eat it? It seems to me like it's just telling you what you already know, right? Let me try this. The whereby clause says subscribers can be informed when a specified portion of the database will be received. So another option would be that subscribers can be informed when a show is received and subscribers can be informed when a show was received. All those flow from the prior limitations, but the fact that this whereby clause limits it to giving advanced notice rather than concurrent notice or past notice. But why are you interested on something that happened in the past and you can't observe anyway? I'm not saying that a subscriber would necessarily be interested. Often we're interested in things that happened in the past, but the point is that shows that this whereby clause is not the only result flowing from the prior limitations. In other words, it's restricted to that one case, which further restricts the claim. And that's why it's a limitation. You didn't bite on my argument, but I'm going to try one more time anyway. So my argument was, or my thinking, my concern is that maybe this whereby clause, perhaps there are a million reasons why you might want to decode the timestamp, because maybe the computer will use it internally for something else, scheduling transmissions, doing things, but not necessarily making it available to the subscriber. And making it available to the subscriber, making it so that the subscriber can access it right on the screen, is a separate kind of almost structural component of the claim. I would agree with that. Okay. Well, the point is, that's something not required by the prior elements. That's something that's added, which is why it's restricted. Well, let me ask you. Before you get to the whereby clause, all the prior elements, once you've completed those steps, it is accessible to the subscriber. Yes. Nothing more, there's not another step that's required to make it accessible. Wait, why isn't it accessible to the subscriber? No, no, let me retract that. It's not necessarily, the only way it becomes accessible to the subscriber is by decoding the timestamp to make it accessible, well, by sending the timestamp information in advance, decoding it to give the subscriber advance notice of when something is going to be received. Well, the final step is said method including decoding said timestamps and said indices at said subscriber stations. So at that point, having completed that step, it's accessible to the subscriber, right? Yeah, there's two things that have to happen. You have to give notice when something's going to be received, and then you have to send the item about which notice is being provided. And if we send the notice in advance of the item, that's what the whereby clause is talking about versus sending those simultaneously, which is what the prior art does. And that's why it distinguishes from the prior art. I'm not understanding your response to Judge Prost either. I understand her to be clearly saying to you, does decoding necessarily mean availability to subscriber? Because my response to that would have been a resounding no, and I would have thought that's what you would have said, and instead you said yeah, and then said a bunch of other stuff I didn't get. So think about it. Does decoding necessarily mean people have access to it? It's decoded inside the computer. Right, right. So isn't the whereby step the only one? The point I think both of you are making is that there are a number of things added by this whereby clause that are not inherent in prior claim limitations, apart from the ones that I focused on. And when this whereby clause is properly construed as a limitation, we see that it distinguishes the prior art. The prior art textbook, for example, sends the time code with the page it's identified. So it only provides simultaneous notice of when something's going to be received. It doesn't provide advanced notice. Thus the capability in the whereby clause is not satisfied by the prior art, and that's why it's distinguished. And the same is true with the other art cited by DIRECTV. When we get to the Reusen art, for example, in the obviousness case, there is no – well, let me go back to JEXI. DIRECTV says that, well, you could put an indication on the menu page that the – when something's going to be received, but that is not a timestamp that has been decoded to provide that notification. There's no timestamp underneath that menu item. And that's why there's no anticipation there. I see I just had a couple of minutes before I get into my rebuttal time. I wanted to just note that this whereby clause has always been treated as a limitation in this claim, both in the prosecution history and throughout the history of this case. It wasn't until – Well, the appeal rejected it as indefinite, and then because it didn't distinguish prior art, it's really not really material to patentability either, is it? Well, I would take issue with that. I think under FESTO, it's regarded as – that type of rejection would be regarded as a limitation. That would give rise to some estoppel effects. Here, if it had no limiting effects, the PTO or the applicant, at least in response to that rejection, could have just canceled the claim language. Instead, the applicant went to the trouble to amend the claim language to overcome that indefinite rejection and ensure that that language was in the whereby clause. Can I just ask you one final question on the other claims that you haven't covered? But I just want to understand this. Assuming hypothetically that with respect – we get by this whereby clause, we're left with the other claims 222644. I understand you've made numerous arguments about no new trial, waiver, and all of that. Assuming we get by that, are you left with a factual dispute nonetheless on the obviousness and anticipation? Because I don't think you made that very strongly. And I wonder – initially – well, let me ask you this. They filed for summary judgment. Did you file a cross-motion for summary judgment? We did, Your Honor. So presumably you, too, thought that there were no underlying factual issues that were in dispute. It was just a matter of raising all these legal questions, right? Yes. The summary judgment motion we filed was based on the arguments and evidence submitted at trial. However, our position is that there are factual issues that preclude entry of summary judgment of anticipation. On the question of obviousness, we've actually gone as far as to submit an expert declaration that established the existence of genuine issues of material fact. That was never controverted in the record. On that record, it's inappropriate to enter summary judgment of obviousness. And, of course, we also maintain that the district court went beyond the mandate. It should have just reviewed JMOL motions, but instead it opened the thing entirely up and also relied on additional prior art that wasn't before the court in the first trial. There was no reason that shouldn't have been before the court, and, therefore, that was inappropriate.  I'll save the rest of it. Thank you, Mr. Roberts. Mr. Kastanis. Thank you, Your Honor, and may it please the court. Judge Clark was correct to rule that the embellishments to Invalid Claim 16 that were added by the five claims that remain at issue in this case did not make those claims into patentable inventions. And in so doing, we faithfully honor this court's mandate that judgment should be affirmed. Let me start by responding to my friend's arguments about the mandate and the waiver. The court's mandate in the prior case said, we remand for a new trial on both infringement and validity. Judge Clark honored that, and under the Exxon case that's cited in the party's briefs, the district court was free to act in any way that was consistent with that mandate in the way that he acted, including allowing us to use three long-ago-disclosed pieces of prior art was not an abuse of his case management discretion. With regard to the waiver argument made, what our opponent's brief does with regard to... Can I move you to the whereby clause? I'm sorry? Do you mind if I move you to the whereby clause? I'm happy to move to the whereby clause, Judge Moore. So you heard the questions that I was asking your opposing counsel. What do you think the test should be for when a whereby clause ought to be treated as a limitation? I mean, it is in the body of the claim. This is not like the preamble. So when should a whereby clause be treated as a limitation? Well, I do think, as we said in our brief, Your Honor, that the Catalina decision that talks about preamble sets forth a lot of principles that are meaningful to this inquiry with regard to the whereby clause as well. They're bookends to the claim. This whereby clause is simply stating the intended result. It's in the body of the claim. I mean, aren't elements in the body of the claim presumably limitations? Well, except that if you look at this Court's decisions in Minton and Hofer, for example, you'll see that, in effect, the Court has adopted a presumption that whereby clauses are not limitations. A presumption. Okay, so show me where the presumption is in this case. I have them here. I don't see the word presumption anywhere. I don't think the word presumption is used. I think that was the per curiam. I think you just overstated it. Well, I didn't. So why don't you show me what language you think. I think it was ordinarily, I believe, if I remember the word correctly. Show me where in the opinion you think it creates something akin to a presumption. Hofer, it would be on page 1329 if you want to go there. Okay. Or Minton, I can refer you to the right page there if it would help. 1381. Excuse me just a second. I think that what you see at 1329 is the language of the per curiam opinion that says, it is correct that a whereby clause generally states the result of the patented process. And then it goes on to say, however, and this is what I believe is properly read as an exception to this ordinary rule. When the whereby clause states a condition that is material to patentability, it cannot be ignored in order to change the substance of the invention. And Judge Rader, I think that answers your question or your inquiry to my friend on the other side. This is not material to patentability. It doesn't contain steps. It doesn't contain structure. And for all of these, I've heard that it adds two additional limitations. But there's no method step in there. There's no structure. Why is the method step providing access? There's a difference between generating something and decoding it. It could then be used internally by the system and never the user could be given access. Why is it giving access a separate step? I think that the capability is in fact inherent. And that means that even under the test that they're proposing. Oh, come on. My computer processor decodes something? That doesn't mean inherently I have access to it. I mean, it could be beyond a veil of software, which I don't have access to. It's not inherently accessible simply because your processor is doing something. Well, and that, I guess, brings up the fact that this whereby clause until the remand was never construed. And Finisard never asked for a construction of it. And we think the more natural reading is the one that Judge Prost was giving in the earlier argument, which is that it simply states a capability. It might even require some additional things. It might require some additional things to be done. But those steps provide that capability once you've done all of that. And the capability is not to actually get it onto a screen, but whereby subscribers can be informed. It may be informed if you add something else. It may be informed if you put it through an algorithm. But ultimately, this Court's decisions, again, Minton and Hofer say material to patentability. This was not material to patentability. I think it's interesting what Minton says, though. Minton says we're not going to give any weight to it if it's just stating an intended result. Is that different than saying, is there a way of recognizing that it is part of the claim and it receives all the importance that any part of the claim should receive, even though we're going to give no weight to it if it states only an intended result? Sure. No limiting weight, I think, would be what you would give to it. But it still does give, perhaps it explains the utility of the claim for purposes of Section 101. Okay. Why wouldn't that be relevant to seeing if it distinguishes over prior art? I'm sorry. I didn't hear the first part of your question. Why isn't even that amount of weight relevant to distinguishing over prior art? I think what you'd then have to do is to look to the prosecution and see if it was in fact used to distinguish over prior art, and it wasn't. And that's what we're saying in our brief, that this is not material to patentability and it wasn't considered so by the examiner. I'm getting to the point, does this really add something that Gexie doesn't disclose? Not really, no. I mean, if you look at page 62 for example. See, if you're right that it's only stating an intended result, then Gexie ought to have the same result in it, right? That's exactly, and that is our position. How do you reach that position? Well, if you look at page 62, for example, of Gexie, the Gexie reference, it contains, and this is at A29068 of the record, it says the time code is used for various purposes, such as for display on the screen, for access of time-coded pages transmitted at precise times, or simply as an extension of page numbers, in which case it loses its significance as an expression of time. But it's the first part of that sentence that discloses that. Your argument, as I understand it, is that even if we construe the whereby clause as a limitation, Gexie discloses displaying it on the screen, and therefore it's obvious when you combine video architect. That's absolutely the case. That's absolutely the case. And it's quite clear that both the Roizen and Kinghorn references do disclose putting the advanced time of something that's going to be received in the future on the screen. If that's the only thing that's missing, that is we used a word that some of the people who read our brief didn't understand, Philip, to describe the little bit of additional elaboration these claims brought, but that would be a total fill-up on top of what Gexie already discloses. With respect, I think that I've answered the questions that are responsive to Mr. Roberts' argument. I don't want to go into the claims that he didn't talk about, unless the Court has questions or unless the Court wants me to go other places. Thank you, Mr. Castanis. Mr. Roberts? Mr. Castanis says even if we consider the whereby clause to have some weight, that it's still disclosed by Gexie and at least Gexie with Kinghorn and Roizen in the other reference. Let me start there. The problem with the Gexie reference is that the time code they're referring to is in fact displayed on the screen, but it's displayed on the screen that is identified by the time code. Thus, it's impossible for the Gexie reference to provide the capability recited in the whereby clause, and that is telling a subscriber when something will be received. At best, Gexie shows simultaneous informing of the subscriber when it has been received. That's the disconnect there. And that's not cured by looking at Roizen or Kinghorn, because Roizen or Kinghorn do nothing more than a TV guide. It's printed information. It's printed on the screen instead of in the paper, but that capability in the whereby clause has to flow from the prior steps. That's the part we're missing. In the Roizen reference, it says that at a specific time you can watch the news account of President Reagan not going to the Philippines or something. Why isn't that telling me what will be received? Because it has to not only tell you what will be received, but it has to provide that capability through the prior claim limitations, and that is by the decoding of time stamps that are included within indices. There is no index with a time stamp in it that is decoded that provides that information. That's just text on a screen. Underlying that information is just digital information that generates that text. Assuming that gets you by anticipation, how would you get by obviousness? Well, the same problem. Roizen is an obviousness case. There is no instance in the prior... But the point is you'd have the GICSI providing all the decoding information and the Roizen showing how to display it and when it will be received. Why wouldn't that be an easy combination for anyone of skill in the art? The disconnect is here. If there is an index that includes a time stamp, then that index with the time stamp, that time stamp is not decoded to provide the advance notice to the subscriber. If there is advance notice provided to the subscriber, it's not done with an index producing a time stamp. And that problem is found in all of the prior art. There is no single reference that shows communication or decoding of an index to provide the advance notice when something is going to be received. And, of course, index here has been given a very specific interpretation by the court, and that is digital information that contains an identification value used to refer to other items in the information database. That's why mere text on a screen is not an index. Can I ask you one more question about this timing? You keep talking about it, because I really don't think I'm understanding, and I want to. Are you saying that because the Whereby Clause talks about information that will be received and the decoding of the time stamp then is something that already has been received? Is that what you're trying to... Yes, you have to decode the time stamp to inform the subscriber when something will be received. So you decode the time stamp, you inform the subscriber, and then later the thing you said is going to come actually comes. Okay. And just getting back to the test that should be applied, DIRECTV offers this test that they pull out of the Hoffer case. That test is contrary to cases going back to the 1930s, contrary to this court's decision in Texas Instruments, which both Hoffer and Minton cite to, either directly or indirectly, which clearly state that the Whereby Clause has to flow from the inherent limitations. If it's the inherent result of prior limitations, it can be ignored. If it adds further limitations, it has to be acknowledged, and we would ask on that basis that this court reverse the summary judgment on anticipation, obvious, and remand. Thank you. Thank you, Mr. Roberts.